**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **NICHOLAS SEMRAU**, on behalf of himself and all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**UNITED PARCEL SERVICE, INC.**<br><br>*Defendant*. | Case No. |

Nicholas Semrau ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations against United Parcel Service, Inc. ("UPS" or "Defendant") upon personal knowledge as to himself and his own acts, and as for all other matters, based upon the investigation made by his counsel, as follows:

## I. NATURE OF THE ACTION

1. Plaintiff brings this action to recover import duties and unfair and deceptive fees that UPS unlawfully collected from Plaintiff, including those pursuant to tariffs imposed under the International Emergency Economic Powers Act of 1977 ("IEEPA").

2. On February 20, 2026, the Supreme Court of the United States held that tariffs imposed under IEEPA were unauthorized and illegal. *Learning Resources, Inc. v. Trump*, Nos. 24-1287 & 25-250 (U.S. Feb. 20, 2026).

3. UPS is a customs broker that served as the importer of record for consumer shipments; accordingly, UPS paid all duties and fees, including those imposed under IEEPA, to U.S. Customs and Border Protection ("CBP") on behalf of Plaintiff and then billed Plaintiff directly for "fees and taxes." UPS also charged ancillary administrative, brokerage, disbursement, and other fees in addition to the duties and fees paid to CBP.

4. Plaintiff brings this action pursuant to: (i) the Kansas Consumer Protection Act § 50-623, *et seq*.; (ii) breach of fiduciary duty; and (iii) unjust enrichment. Plaintiff brings this action on behalf of a nationwide class for damages and any other relief deemed appropriate by the court.

## II. PARTIES

5. Plaintiff Nicholas Semrau is a natural person and citizen of the State of Kansas. Plaintiff Semrau purchased goods through an online retailer and was required to pay UPS tariffs and other fees for the shipment of goods coming from outside the United States.

6. Defendant United Parcel Service, Inc. is an Ohio corporation with its principal place of business located at 55 Glenlake Parkway, NE Atlanta, GA

30328. UPS is a customs broker that serves as the importer of record for consumer shipments transported through UPS's international shipping services, including Plaintiff's shipment at issue in this action.

## III. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA") because there is minimal diversity between Plaintiff (Kansas) and UPS (Ohio and Georgia), the proposed class consists of more than 100 members, and the amount in controversy exceeds $5,000,000 exclusive of interest and costs.

8. This Court has personal jurisdiction over UPS, because its principal place of business is in this District. UPS has purposefully availed itself of the laws, rights, and benefits of the State of Georgia.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## IV. FACTUAL ALLEGATIONS

### A. IEEPA Tariffs

10. On April 2, 2025, the President of the United States declared a national emergency related to foreign trade and economic practices and imposed

"Reciprocal Tariffs" of 10% on products of all countries effective April 5, 2025, and additional country-specific rates effective April 9, 2025. Executive Order 14257, "Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trades Deficits," 90 Fed. Reg. 15041, dated April 2, 2025 ("Reciprocal Tariffs").

11. The President modified the country-specific tariffs multiple times, including issuing a 90-day suspension of all country-specific rates, excluding China, effective April 10, 2025, and later issuing a 90-day suspension for reciprocal country-specific tariffs on products of China, effective May 14, 2025. Executive Order 14266, "Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment" 90 Fed. Reg. 15625, dated April 9, 2025; Executive Order 14298 "Modifying Reciprocal Tariff Rates to Reflect Discussions Partner with the People's Republic of China" 90 Fed. Reg. 21831, dated May 12, 2025.

12. Effective August 7, 2025, countries listed on Annex I of E.O. 14326 became subject to the tariff rate specific to the country of origin of the product. Executive Order 14326 of July 31, 2025, "Further Modifying the Reciprocal Tariffs Rates," 90 Fed. Reg. 37963, dated August 6, 2025. Canada and Mexico were exempt from the IEEPA Reciprocal tariffs, and China remained subject to the all-other country rate of 10%. Id.

13. As of September 9, 2025, the worldwide Reciprocal Tariffs remained at 10% and applied to China; products of Indonesia were subject to a 19% IEEPA Reciprocal duty rate; and products of Canada or Mexico were exempted from IEEPA Reciprocal tariffs.

14. In addition to the IEEPA Reciprocal tariffs, the President declared national emergencies related to drug trafficking and border security and imposed tariffs of 25% on products from Canada and Mexico, and 10% on Chinese products, effective February 4, 2025. Executive Order 14193, "Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border," 90 Fed. Reg. 9113, dated February 1, 2025, as amended by Executive Order 14197, "Progress on the Situation at our Northern Border," 90 Fed. Reg. 9183, dated February 3, 2025, and as directed by the Executive Order 14226, "Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border," 90 Fed. Reg. 11369, dated March 2, 2025. ("Canada Trafficking IEEPA"); Executive Order 14194, "Imposing Duties to Address the Situation at Our Southern Border," issued on February 1, 2025, and Executive Order 14198, "Progress on the Situation at Our Southern Border," issued on February 3, 2025, and as directed by the Executive Order 14232, "Amendment to Duties To Address the Flow of Illicit Drugs Across Our Southern Border," 90 Fed. Reg. 11787, dated March 11, 2025. ("Mexico Trafficking IEEPA"); and Executive Order 14195, "Imposing

Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China," 90 Fed. Reg. 9121, dated February 1, 2025, as amended by Executive Order 14200, 90 Fed. Reg. 9277, dated February 5, 2025, and further amended by Executive Order 14288, 90 Fed. Reg. 11463, dated March 3, 2025 and Executive Order 14256, 90 Fed. Reg. 14899, dated on April 2, 2025. ("China Trafficking IEEPA") (collectively, "Trafficking IEEPA").

15. The President modified these tariffs multiple times, including raising the Chinese tariff from 10% to 20%, effective March 4, 2025. Executive Order 14228, "Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China," 90 Fed. Reg. 11463, dated March 3, 2025.

16. At the time of import of the subject products, the Trafficking IEEPA tariffs remained at 25% for Mexico, 35% for Canada, and 20% for China. Executive Order 14232, Executive Order 14325, Executive Order 14228.

17. On February 20, 2026, the Supreme Court invalidated all IEEPA-based tariffs. The Court held "that IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026) (slip op. at 20).

**B. Section 321, The De Minimis Exemption**

18. Section 321(a)(2)(C) of the Tariff Act of 1930 ("De Minimis") allows for the admission of articles free of duty and of any tax if the aggregate fair retail

value in the country of shipment of article does not exceed $800 and is imported into the United States by one person on one day.

19. Effective February 4, 2025, the De Minimis Exemption was suspended for products subject to the IEEPA Trafficking tariffs that are sent to the United States through the international postal network from the PRC, Hong Kong, Canada, and Mexico.

20. Effective May 14, 2025, the De Minimis Exemption was suspended for all products of China, sent to the United States through the international postal network from the PRC or Hong Kong.

21. Finally, pursuant to Executive Order 14324 dated July 30, 2025, "Suspending Duty-Free De Minimis Treatment for All Countries" de minimis duty-free treatment under 19 U.S.C. § 1321(a)(2)(C) was no longer available for shipments entering the United States on or after August 29, 2025.

**C. UPS's Role as Customs Broker and Importer of Record**

22. When international packages are shipped into the United States to an individual consumer via UPS, UPS acts as the customs broker and importer of record.

23. As a customs broker, UPS conducts "customs business" on behalf of the consumer. "The term "customs business" means those activities involving transactions with U.S. Customs and Border Protection concerning the entry and

admissibility of merchandise, its classification and valuation, the payment of duties, taxes, or other charges assessed or collected by U.S. Customs and Border Protection upon merchandise by reason of its importation, or the refund, rebate, or drawback thereof. It also includes the preparation of documents or forms in any format and the electronic transmission of documents, invoices, bills, or parts thereof, intended to be filed with U.S. Customs and Border Protection in furtherance of such activities, whether or not signed or filed by the preparer, or activities relating to such preparation, but does not include the mere electronic transmission of data received for transmission to Customs." 19 U.S.C. § 1641.

24. As the importer of record, UPS advances the duties owed to CBP on behalf of the recipient of the imported goods. UPS then bills the recipient directly for those charges, in addition to "administrative fees incurred for the service of rating and assessing IEEPA tariffs."

25. UPS pays the duties and fees to CBP, including IEEPA tariffs, and then seeks full reimbursement from the individual consumer. Consumers like Plaintiff bear the entire economic burden of the tariff, not UPS.

**D. UPS's Ancillary Administrative, Brokerage, and Disbursement Fees**

26. UPS also charges additional ancillary fees in connection with customs entry processing, including "administrative, brokerage, and disbursement fees",

all of which were charged to process customs entries. Such administrative fees were often greater than the duties imposed under IEEPA.

27. UPS represented to consumers that these charges were mandatory, reflected actual incurred tariff costs, and were calculated based upon lawful customs valuation methodology.

28. Plaintiff, as a reasonable consumer, understood these representations to mean that these fees were tied to charges imposed by CBP.

29. Although UPS has committed to obtaining a refund for the voided IEEPA tariffs from the government and then returning those IEEPA tariff charges to consumers[1], it explicitly refuses to refund any of the ancillary fees that resulted from the void and invalid IEEPA tariffs.[2] As stated by UPS:

> **Will UPS refund administrative, brokerage and disbursement fees?**
>
> Administrative fees were incurred for the services of rating and assessing IEEPA tariffs, which were legal and valid at the time of the charge. These fees are nonrefundable.

**E. Plaintiff's Purchase**

30. On or about September 8, 2025, Plaintiff purchased an Indonesian-origin knit hat from an eBay seller in Canada for $65.99 CAD, plus $8.00 CAD

[1] https://www.usatoday.com/story/money/2026/04/30/ups-fedex-returning-customers-tariff-refunds/89881625007/ (last visited May 15, 2026).

[2] https://www.ups.com/us/en/shipping/international-shipping/tariffs/tariff-refunds (last visited May 15, 2026).

for shipping via UPS and $6.26 CAD for sales tax, for a total of $80.25 CAD (or $60.43 USD based on the exchange rate at purchase: 1 USD = 1.32804 CAD).

31. On or about September 9, 2025, after Plaintiff had already paid for the knit hat and shipping, UPS sent Plaintiff an email notification, with the subject line "Payment is Due at Delivery", which stated "you can now pay for your EBAY CANADA package or pay your driver. Total Amount Due $39.55 USD. Additional charges may have been applied based on recent tariff policy changes."

32. Of the $39.55 USD "duties, taxes, and processing fees" UPS collected from Plaintiff, $9.44 USD was for the voided and invalid IEEPA tariffs, $3.93 USD was for other duties, and $0.17 USD was for CBP's Merchandise Processing Fee. UPS charged the remaining $26.01 USD, nearly 3x the IEEPA duties, for "administrative, brokerage, and disbursement fees." CBP did not impose these charges on UPS.

33. In other words, despite UPS's representation that the $39.55 Plaintiff owed was due to "recent tariff policy changes," 65 percent of the fees UPS charged Plaintiff ($26.01) were not actual tariff or shipping costs incurred by UPS.

34. UPS capitalized on the confusion surrounding the sudden imposition of broad, sweeping tariffs on consumer goods and embedded fees for profit within

duties incurred from CBP pursuant to IEEPA tariffs and failed to disclose that these purported tariff charges were inflated and discretionary.

35. UPS's invoice to Plaintiff failed to explain how these fees were calculated, whether they reflected actual costs, or whether UPS retained any portion of the fees.

36. In reliance on UPS's representations, Plaintiff paid these charges. As a result, Plaintiff suffered economic injury by paying the now voided IEEPA tariffs and the inflated and deceptive fees.

37. Further, in addition to the IEEPA tariffs that will be refunded to UPS as the importer of record, UPS has announced it will not return the fees purportedly connected to IEEPA tariffs despite the invalidation of the IEEPA tariffs.

## V. CLASS ALLEGATIONS

38. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all other similarly situated individuals (the "Class"), defined as follows:

> All individuals in the United States who paid Defendant IEEPA tariffs and administrative, brokerage, disbursement, and other IEEPA tariff-related fees during the applicable limitations period.

39. Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers, directors and employees and officers, and judicial officers and immediate family members and associated court staff assigned to this case.

40. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

41. While Plaintiff does not know the exact number of Class members at this time; given the nature of the claims and that UPS is one of the largest customs brokers in the United States, the Class members unquestionably number in the hundreds of thousands or more. They are so numerous that joinder of all members is impracticable.

42. The following questions of law and fact are common to the Class and predominate over questions that may affect individual Class members:

a. Whether Defendant misrepresented actual import duties, taxes, and processing fees imposed by CBP;

b. Whether the administrative fees Defendant charged Plaintiff were reasonable for services to rate and assess the IEEPA tariffs;

c. Whether Defendant concealed fee markups;

d. Whether Defendant's charges to Plaintiff exceeded its actual costs imposed by CBP;

e. Whether Defendant misled Plaintiff and the Class into believing these charges were mandatory;

f. Whether Defendant breached its fiduciary duty to Plaintiff and the Class;

g. Whether Defendant was unjustly enriched as a result of the unlawful, deceptive, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon it by Plaintiff and the Class; and

h. Whether Plaintiff and the Class are entitled to monetary damages, and if so, the proper measure of those damages.

43. Plaintiff's claims are typical of those of the Class because Plaintiff, like all Class members, reasonably understood these fees to be mandatory, paid UPS administrative, brokerage, disbursement, and other purported IEEPA tariff-related fees and sustained damages from UPS's wrongful conduct.

44. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions. Plaintiff has no interests that conflict with those of the class.

45. The requirements of Fed. R. Civ. P. 23(b)(3) are met as common issues predominate over any individual issues, and treatment of this matter as a class action is superior to numerous individual actions.

46. The prerequisites to maintaining a class action for equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met, as UPS has acted or refused to act on grounds that apply generally to the Class, so that final corresponding relief is appropriate with respect to the Class as a whole.

47. UPS's conduct is generally applicable to the Class as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole. As such, UPS's systematic policies and practices make relief with respect to the Class as a whole appropriate.

48. The litigation of separate actions by Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for UPS. For example, one court might enjoin UPS from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class, although certain Class members are not parties to such actions.

49. Plaintiff and other Class Members have suffered damages as a result of UPS's unlawful and wrongful conduct. Absent a class action, UPS will wrongly and unjustly retain substantial funds received as a result of its wrongdoing, and such unlawful and improper conduct shall, in large measure, not go remedied. Absent a class action, the members of the Class will not be able to effectively litigate these claims and will suffer further losses, as UPS will be allowed to

continue such conduct with impunity and retain the proceeds of its ill-gotten gains.

**COUNT I**
**(Deceptive and Unconscionable Acts and Practices in Violation of the Kansas Consumer Protection Act)**

50. Plaintiff incorporates by reference each of the allegations contained in paragraphs 1-49 of this Complaint and further alleges as follows:

51. This cause of action is brought pursuant to the Kansas Consumer Protection Act §§ 50-623 *et seq*. (the "KCPA").

52. Plaintiff and other Class members are "consumers" as the term is defined by K.S.A. § 50-624 because they acquired services at issue for personal, family, household, business or agricultural purposes.

53. UPS is a "supplier" as the term is defined by K.S.A. § 50-624 because in its ordinary course of business, it regularly solicits, engages in or enforces consumer transactions.

54. The transactions at issue constitute "consumer transactions" under K.S.A. § 50-624.

55. The conduct alleged in this complaint constitutes deceptive and unconscionable acts and practices for the purposes of the KCPA (K.S.A. § 50-626-27), and the conduct undertaken by UPS in transactions resulted in the sale of services to consumers.

56. As alleged more fully above, UPS violated the KCPA by falsely and deceptively representing to Plaintiff and the Class that UPS incurred and was merely passing through IEEPA related tariff charges. In reality, UPS inflated these charges and embedded fees for profit within fees within duties incurred from CBP pursuant to the void and invalid IEEPA tariffs.

57. As a result of UPS's conduct, UPS has violated K.S.A § 50-626(b)(2)-(3), and K.S.A. § 50-627(a)-(b).

58. Pursuant to K.S.A. § 50-634(d)-(e), Plaintiff seeks on behalf of himself and the Class, actual damages, reasonable attorneys' fees, and any other relief the court deems proper.

## COUNT II
## (Breach of Fiduciary Duty)

59. Plaintiff incorporates by reference each of the allegations contained in paragraphs 1-49 of this Complaint and further alleges as follows:

60. As a customs broker, UPS has a fiduciary duty to the importer in fact/consignee (Plaintiff) and is liable for keeping duties/fees CBP refunds to the Broker, which were paid by the importer in fact/consignee (Plaintiff).

61. Pursuant to its fiduciary duty as a customs broker, UPS is prohibited from willfully and knowingly deceiving or misleading any client with intent to defraud in the course of its customs business. 19 U.S.C. § 1641

62. The Supreme Court of the United States held that IEEPA does not authorize the imposition of those tariffs and that these tariffs were unlawful.

63. As a result, the tariff-related charges were not only deceiving and misleading, they were unlawful and unauthorized. By imposing and failing to return the funds amassed by making these charges, Defendant breached its fiduciary duty to Plaintiff and the Class.

64. As a result of UPS's breach of its fiduciary duty, Plaintiff and the Class suffered damages, including but not limited to: payment of unlawful tariff-related fees and ongoing loss of use of money.

65. Plaintiff seeks on behalf of himself and the Class, actual damages, interest, restitution, and any other relief the court deems proper.

**COUNT III**
**(Unjust Enrichment)**

66. Plaintiff incorporates by reference each of the allegations contained in paragraphs 1-49 of this Complaint and further alleges as follows:

67. Plaintiff and the Class members conferred benefits on UPS by purchasing the services at issue.

68. UPS has knowledge of such benefits and voluntarily accepts and retains these benefits.

69. UPS has been unjustly enriched by retaining the revenues derived from Plaintiff's and the Class members' purchases of the services.

70. Retention of that money under these circumstances is unjust and inequitable because UPS falsely and deceptively represented to Plaintiff and the Class that UPS incurred and was merely passing through then-mandatory IEEPA tariff charges. In reality, UPS inflated such charges and embedded fees for profit within fees within duties incurred from CBP pursuant to void and invalid IEEPA tariffs.

71. These misrepresentations and omissions caused injuries to Plaintiff and the Class members because they would not have purchased the service or would not have paid as much for the service, had they known more than half of UPS's charges were for-profit fees rather than actual costs incurred.

72. Because UPS's retention of the non-gratuitous benefits conferred to it by Plaintiff and the Class members is unjust and inequitable, UPS owes restitution to Plaintiff and the Class members for its unjust enrichment.

73. As a direct and proximate result of UPS's unjust enrichment, Plaintiff and the Class members are entitled to restitution or disgorgement in an amount to be proved at trial.

## PRAYER FOR RELIEF

Wherefore Representative Plaintiff, individually and on behalf of all Class members and all others similarly situated, prays for an Order awarding the following relief:

1. Certifying the proposed Class; appointing Plaintiff as representative of the Class; and appointing Plaintiff's undersigned counsel as Class counsel;

2. Actual damages, including interest;

3. Restitution;

4. Disgorgement;

5. Reasonable costs and expenses of this suit, including reasonable attorneys' fees pursuant to O.C.G.A. Section 13-6-11, and as otherwise allowed by law; and

6. Any further relief that the Court may deem appropriate.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury for all claims so triable.

Date: May 15, 2026

Respectfully Submitted,

*<u>/s/ MaryBeth V. Gibson</u>*
MaryBeth Gibson
Georgia Bar No. 725843
**GIBSON CONSUMER LAW GROUP, LLC**
4279 Roswell Road NE Suite 208 – 108
Atlanta, Georgia 30342
678.642.2503
marybeth@gibsonconsumerlawgroup.com

Ryan F. Stephan*
James B. Zouras*
Danielle M. Sweet*
**STEPHAN ZOURAS, LLC**
222 W. Adams St., Suite 2020

Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
dsweet@stephanzouras.com
Firm ID: 43734

**ATTORNEYS FOR PLAINTIFF**

*Mr. Stephan, Mr. Zouras, and Ms. Sweet, members of the Illinois bar, intend to seek *pro hac vice* admission in this case.